Rachel E. Matteo-Boehm (SBN 195492)
rachel.matteo-boehm@bclplaw.com
Jonathan G. Fetterly (SBN 228612)
jon.fetterly@bclplaw.com
Katherine A. Keating (SBN 217908)
katherine.keating@bclplaw.com
Goli Mahdavi (SBN 245705)
goli.mahdavi@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA  94111
Telephone:   (415) 675-3400
Facsimile:    (415) 675-3434

Attorneys for Plaintiff
COURTHOUSE NEWS SERVICE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| Courthouse News Service, | Case No. 18-6118 |
| Plaintiff, | |
| vs. | **COMPLAINT FOR  INJUNCTIVE AND DECLARATORY RELIEF** |
| Rebecca J. Fleming, in her official capacity as Court Executive Officer/Clerk of the Santa Clara County Superior Court, | |
| Defendant. | |

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

1   Plaintiff Courthouse News Service ("CNS"), by and through its undersigned attorneys,

2   alleges the following in support of its Complaint for Injunctive and Declaratory Relief against

3   Defendant Rebecca J. Fleming, in her official capacity as Court Executive Officer / Clerk of the

4   Santa Clara Superior Court ("Defendant").

5                                    **INTRODUCTION**

6        1.      The First Amendment provides the press and public with a presumptive right of

7   access to civil complaints filed with the court.  *Courthouse News Service v. Planet*, 750 F.3d 776,

8   787-88 (9th Cir. 2014).  Grounded in the right of free expression, where the First Amendment

9   right of access applies, it must be timely.  Timely access to new civil complaints is essential to

10  ensure that news of civil disputes reaches the public when it is most likely to become the subject

11  of public discussion, and to accurate and fair news reporting of civil disputes, and is thus vital to

12  the public's ability to discuss what is happening in an important branch of government.  Delayed

13  access inhibits that discussion.

14       2.      Courts across the country have recognized that the presumptive right of access to

15  complaints attaches upon receipt of those documents by a court.  When a complaint is withheld,

16  the public is left unaware that a case has been filed, that the powers of the judicial branch of

17  government have been invoked, and that public resources have been spent to resolve a dispute.

18       3.      Traditionally, at courts across the country, new complaints were available for

19  review by the end of the day so they could be reviewed by journalists who visited the courthouse

20  every day to report on the day's newsworthy complaints.  Complaints were filed in paper, and

21  intake clerks would set aside the new complaints for the journalists to review.  This was the case at

22  Santa Clara Superior Court ("SCSC") in 1996 when CNS first started covering the court, and in

23  2010 when SCSC had in place access procedures under which reporters reviewed that day's new

24  complaints in a cardboard "same day" bin, at a desk behind the counter in the records department

25  of the clerk's office.

26       4.      The emergence of e-filing technology should not, and need not, erode the tradition

27  of timely access to new complaints by the end of the day on which they are filed.  As

28  demonstrated by the vast majority of federal district courts, and many state courts, access to new

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

1

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

1   e-filed complaints can be provided in a timely and efficient manner, soon after receipt by the

2   court, and without the need for handling by court staff and resulting delays when busy clerks

3   cannot attend to post-filing administrative tasks as quickly as they might like.

4        5.    In February 2018, SCSC implemented mandatory e-filing for all new unlimited

5   civil complaints, except for those filed by *pro se* litigants.  SCSC uses the Odyssey case

6   management and e-filing platforms created by Tyler Technologies, Inc.  The Odyssey case

7   management and e-filing systems include the "review queue" feature through which new

8   complaints can be made available for review by the press or public right after they cross the

9   electronic equivalent of the intake counter.   However, it is SCSC's policy and practice to

10  withhold access to new e-filed complaints until after they have been administratively processed by

11  court staff and made available for viewing on public access terminals located at the courthouse.

12  This can take days, or even weeks, as new complaints are received into SCSC's e-filing system

13  and become backlogged in an electronic pile, withheld from public view until court staff finds the

14  time to process them.  As a result of Defendant's practice and policy of withholding public access

15  to new civil complaints until after administrative processing, new e-filed complaint are frequently

16  withheld from public view for up to one business week, and often longer.

17       6.    CNS brings this action to preserve in the e-filing world the timely access that

18  traditionally existed in paper-filing courts, including SCSC.   In California, the Superior Courts in

19  Fresno and Kern counties use the same e-filing and case management platform as SCSC:  Odyssey

20  eFileCA.  Both the Fresno and Kern Superior Courts provide timely access to new e-filed

21  complaints through a "review queue" in the Odyssey system through which new e-filed

22  complaints can be seen while they wait for court staff to process them.  CNS has asked SCSC to

23  take advantage of Odyssey's review queue functionality, and to cease the practice of denying

24  access to new e-filed complaints until after they have been processed, or to provide timely access

25  in some other manner.  To date, Defendant has not committed to providing timely access to new e-

26  filed civil complaints at SCSC.

27

28

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF          CASE NO. 18-6118
12216944.1

**JURISDICTION AND VENUE**

7.      CNS' claims arise under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, Title 42 U.S.C. §§ 1983-1988.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights) and 2201 (declaratory relief).  Defendant is subject to personal jurisdiction in this judicial district at the time this action is commenced.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) because, on information and belief, Defendant resides in California and is employed in this district, and because a substantial part of the events or omissions giving rise to CNS' claims occurred in this district.

**PARTIES**

9.      CNS is a California corporation with its principal place of business located in Pasadena, California.  A widely-read legal news service with thousands of subscribers across the nation, CNS specializes in news reporting about civil litigation, from the date of filing through the appellate level, in state and federal courts throughout the United States.  CNS' comprehensive and timely coverage of civil litigation through its print, website, and e-mail publications has made it a go-to source of information about the nation's civil courts.

10.     Acting in her official capacity, Defendant, as well as those acting at her direction and under her supervision, is directly involved with and/or responsible for acts giving rise to the delays in access to newly-filed civil complaints experienced by CNS.  These acts reflect the official practices and policies of Defendant.  Defendant's actions are taken under the color of California law and constitute state action within the meaning of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.  CNS seeks relief against Defendant, as well as against her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her or at her direction or under her control.

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF          CASE NO. 18-6118
12216944.1

# FACTUAL ALLEGATIONS

## A.   CNS' Publications And Subscribers

11.     CNS is a nationwide news service founded almost 30 years ago out of a belief that news about civil litigation went unreported because the traditional news media failed to cover much of the important business of the courts.  CNS employs approximately 245 people full and part-time, most of them editors and reporters, covering state and federal trial and appellate courts in all 50 states in the United States.  CNS employs 50 reporters who cover the state and federal trial and appellate courts of California, and who are supervised by CNS' Western Bureau Chief.

12.     CNS offers its readers a variety of publications.  Its New Litigation Reports contain original, staff-written summaries of significant new civil complaints.  These reports are sent to subscribers via e-mail each evening.  CNS currently publishes 16 New Litigation Reports providing daily coverage of new California litigation, including the new actions filed in all four California federal district courts as well as daily coverage of new actions in numerous California superior courts, including SCSC.  The New Litigation Report that covers SCSC is called the *Silicon Valley Report* and has 170 subscribers, including *The Mercury News* in San Jose.  The New Litigation Reports do not cover criminal, domestic relations, or probate matters.

13.     Among CNS' other publications are its two monthly newsletters, the *Securities Law Digest* and *Entertainment Law Digest*, as well as the *Daily Brief*, which covers published, nationwide appellate rulings, including all U.S. Supreme Court and federal circuit decisions, as well as significant rulings from a growing number of federal district courts, including all four districts in California.

14.     In addition, CNS publishes a freely-available website, www.courthousenews.com, featuring news reports and commentary, which is read by hundreds of thousands of people each month.  The website functions much like a print daily newspaper, featuring staff-written articles from across the nation that are posted throughout each day, and rotated on and off the page on a 24-hour news cycle.

15.     CNS has been credited as the original source of reporting on various topics by a wide range of publications, including *The Mercury News, ABA Journal*, ABC News, *The Atlantic*,

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

4

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

*Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR); NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today*, *U.S. News and World Report*, the YouTube news channel, and others. In addition, U.S., Canadian, and New Zealand radio shows have interviewed CNS reporters.

16. CNS has more than 2,200 subscribers nationwide. A substantial set of news and entertainment outlets are CNS subscribers, including but not limited to *The Mercury News, The Atlanta Journal Constitution*, *The Boston Globe*, Buzzfeed, CNN, *The Dallas Morning News*, *Detroit Free Press*, Fox Entertainment Group, *Houston Chronicle*, *Los Angeles Times*, North Jersey Media Group, *The Salt Lake Tribune*, *San Antonio Express News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, and Warner Bros. The Washington, DC-based Center for Public Integrity is also a CNS subscriber.

17. Among academic institutions, subscribers to CNS' New Litigation Reports include Boston College Law School, Boston University, Case Western Reserve University, Harvard Law School, Loyola Law School, MIT Sloan School of Management, Southern Illinois University School of Law, UC Hastings College of Law, and UCLA School of Law.

18. A majority of the nation's large and mid-sized law firms also subscribe to one or more of CNS' publications. Non-law firm business entities, including large publicly-traded companies, government entities, and non-profit organizations, also subscribe to CNS' publications.

19. To prepare the New Litigation Reports and identify new cases for website articles, CNS reporters have traditionally visited their assigned courts on a daily or weekly basis to review all the complaints filed that day (or since their last visit) to determine which ones are newsworthy.

1    However, as the vast majority of federal courts and an increasing number of state courts are

2    putting court records online via PACER and court web sites, CNS also covers courts remotely

3    through the Internet.  Given the nature of the New Litigation Reports and CNS' other news

4    publications, any delay in the ability of a reporter to review newly-filed civil complaints

5    necessarily creates a delay in CNS' ability to inform subscribers and the public of the factual and

6    legal allegations in new civil lawsuits.

7              **A Tradition Of Access To Civil Complaints On Receipt For Filing**

8         20.    A new complaint serves as the opening bell in a legal contest.  In recognition of the

9    media's traditional role as a surrogate to the general public for information about what is

10   happening in the courts, it has been a long-standing tradition for courts to provide reporters –

11   especially those who visit the courts daily – with access to new civil complaints upon receipt for

12   filing and before administrative processing, typically at the end of each court day.  This ensures

13   that interested members of the public learn about new cases while those cases are still newsworthy

14   and likely to be the subject of public attention and discussion.

15        21.    Historically, reporters covering the courts could review and report on newly-filed

16   civil complaints on the day of filing by looking at them at the courthouse.  This access generally

17   occurred via a media bin or box or pile where new complaints were placed right after they crossed

18   the intake counter and before the clerk's office performed the additional administrative tasks that

19   follow the receipt of a new complaint – a process that was traditionally called "docketing" but in

20   recent years, especially as courts have moved to electronic case management systems and

21   electronic filing ("e-filing"), has been referred to as "processing."  This allowed journalists to see,

22   by the end of the day, the new complaints filed with the court earlier in the day so it could report

23   on the newsworthy complaints.

24        22.    In paper-filing courts, a filer approaches the clerk's counter and hands the new

25   complaint to a clerk who completes the intake tasks associated with filing, which typically

26   includes: stamping the complaint as "filed," affixing a date, assigning a case number, and taking a

27   check or credit card for the filing fee.  Once those tasks are completed, the new complaint is

28   considered "filed" and the clerk sets it aside, turning to the next filer in line.  Traditionally, this

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

6

was the point at which the press and public could see the complaint, as it sat in a pile or bin or box pending further administrative handling.  Later, a clerk gathers up the new complaints to complete the "docketing" or "processing" tasks.  This second set of tasks is commonly more time-consuming and includes entering information, such as parties, lawyers, addresses, the nature of case, and the case number, into the court's case management system.  In courts that accept complaints in paper but maintain electronic records, the second set of tasks also includes scanning the complaint into digital form.  Journalists traditionally reviewed the new complaints in paper form, after they were set aside by the intake clerk and before they were picked up by the docketing or processing clerk.  This allowed journalists to review the new complaint, upon receipt by the court, and without having to wait for court staff to finish administrative processing or docketing.

23.     The move from paper filing to e-filing simplified things for courts.  Instead of basic intake work being done by clerks at an intake window, that work is done by the filers themselves (who enter basic case information through the e-filing interface) and by the e-filing system (which checks for whatever minimum submission requirements the court specifies).  Instead of sitting in a bin or box next to the intake window, new e-filed complaints are sitting in a virtual stack (or electronic queue) of new filings, waiting for administrative handling by court staff.  And instead of a clerk picking up paper complaints from the bins next to the intake counter in order to process them elsewhere in the clerk's office, new e-filed complaints are processed by court clerks sitting at computer terminals, handling each new complaint from the intake or review queue, one e-filed document at a time.  The electronic intake or review queues allow e-filing courts to make new e-filed documents available for viewing by the public regardless of what administrative tasks remain for court staff to perform.

24.     The federal courts were the first to move to e-filing, and the vast majority of federal district courts have continued the tradition of timely access in the electronic world by making new e-filed documents, including complaints, available for review right after they cross the electronic equivalent of the intake counter via the PACER public access system.  These documents are automatically accepted, assigned a case number and stamped with the filing date on intake by the CM/ECF system, and become available on PACER without the need for a clerk to first review

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

7

them or complete other post-filing administrative tasks (a collection of tasks analogous to docketing and generally referred to as "processing").  This allows journalists to review and report on the new civil complaints in a timely manner while at the same time allowing busy clerks to complete processing as their schedules and workloads allow.

25.     A handful of federal district courts have continued the tradition of timely access in a slightly different way.  In these courts, new complaints do not flow automatically onto PACER.  To ensure that reporters still have timely access to new complaints, these courts have set up electronic review queues, either at the courthouse, online, or both, where new complaints can be seen as they are received, before assignment of a case number and before docketing or the performance of other administrative tasks that follow the court's receipt of a new complaint.

26.     A small number of federal district courts that accept e-filing do not use either of these two systems but nevertheless have found ways to provide timely access in the e-filing environment.  For example, the Northern District of Alabama prints out paper copies of new e-filed complaints and puts them into a press box located in the clerk's office where reporters can view them.

27.     In the last several years, many state courts have also moved to e-filing, on a variety of electronic filing and case management platforms – some developed in-house, and others supplied by vendors.  Some states courts have set up their electronic access and e-filing public access systems similar to the majority of federal district courts using PACER.  That is, new e-filed complaints flow automatically onto public access terminals or remotely online as the courts receive them.  Examples of this method of continuing the tradition of timely access include state courts in Alabama, Connecticut, New York and Utah.

28.     Other state courts have not set up their e-filing and public access systems in the manner that automatically publishes new e-filed complaints, instead requiring human intervention by court staff to "accept" the complaint and "release" it for public viewing.  To avoid these complaints from being withheld until court staff manually release them (which normally occurs only after administrative processing), an increasing number of these courts have provided access to a review queue – the electronic equivalent of a box with new paper filings waiting for further

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

8

administrative handling.  Examples of this method of continuing the tradition of timely access include state courts in Georgia, Nevada and California.  In California, both the Kern County and Fresno County Superior Courts provide review queue access to new e-filed complaints through the same Odyssey e-filing platform used at SCSC.

29.     These examples demonstrate that the tradition of timely access to complaints that existed for many decades in the paper-filing environment can easily be carried into the e-filing environment, regardless of the particular e-filing or public access system utilized the court.  They also demonstrate that timely access to new e-filed civil complaints can be provided either remotely online or locally at the courthouse via public access terminals, regardless of whether busy court staff has had a chance to complete administrative processing.  Indeed, where this access to e-filed complaints is provided locally at the courthouse, the only difference between it and the traditional "media bin" of paper-filed complaints at the intake counter is that a reporter sitting in the courthouse looks at a computer screen rather than a piece of paper.  By providing access through public terminals located at the courthouse or requiring account registration for online access, courts can easily monitor access to new e-filed complaints.  Of course, other options for providing timely access to e-filed complaints exist as well, as they do in the federal courts.

30.     When CNS began covering SCSC in 1996, new civil complaints were filed in paper and members of the press could go behind the counter and review the vast majority of cases the day they were filed, before administrative processing.  In 2010, SCSC set up a protocol for timely access under which reporters reviewed a "same day bin" in the intake department of the clerks' office, which contained complaints that had been given a case number but for which processing had not been completed.  This allowed journalists who visited the court at the end of every day an opportunity to review and report on the complaints on the day they were filed, and ensured that interested members of the public could learn about new cases in a timely and contemporaneous manner – while those cases were still newsworthy.

31.     There is a good reason for this practice.  The complaint is the document by which the authority of a branch of government is invoked to publicly resolve what had previously been a private dispute.  It sets forth the factual and legal claims.  When a complaint is received by a clerk

9

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

for filing, the public – which funds the operation of the courts – is entitled to know who has invoked the jurisdiction and authority of the judicial branch and to what end.  When a new complaint is withheld, the public has no way of knowing that a new civil proceeding has been initiated.  Even if they happen to learn about a lawsuit, without access to the complaint itself they have no reliable and accurate way to ascertain the factual and legal claims in the new civil action. There are no adequate alternative means or channels for viewing new complaints other than through the courts at which they are filed.

32.    When a newly filed complaint is withheld from public view, the resulting information vacuum leads to inaccuracies in reporting (such as where the media reports from a press release instead of the complaint) and gives a plaintiff the power to control news about the new litigation by feeding the news to a media outlet selected for the spin the plaintiff anticipates from that outlet.  Moreover, delays in access, even of one or two days, make it less likely the complaints will ever be reported on by the press.  And any reports that are written on older complaints are likely to be less prominent and, thus, less likely to come to the public's attention, resulting in less speech and less informed speech about new civil actions.

**B.    <u>Delays In Access At Santa Clara Superior Court</u>**

33.    CNS covers SCSC by sending its reporters to the downtown courthouse located on North First Street in San Jose ("Downtown Courthouse").  On a daily basis, CNS reporters go to the Records Room, which is part of the clerk's office and subject to Defendant's early closure policy discussed further below.  CNS reporters access SCSC's Case Information Portal at one of the public access terminals located inside the Records Room.  Once administratively processed, civil unlimited complaints can be viewed at the public access terminals.  Until then, however, new civil unlimited complaints cannot be seen, even if they have been submitted to and received by SCSC for filing, which entitles the filing party to that day's "filed" stamp if received before midnight on a court day, per Code of Civil Procedure 1010.6(b)(3).

34.    The traditional timely access to new civil complaints that CNS and other members of the media once had at SCSC has deteriorated in recent years as SCSC instituted a policy of withholding access to new paper complaints until after they had been fully processed by court

Bryan Cave Leighton Paisner LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111

10

1    clerks, regardless of whether court staff were actively working on them.  Based on CNS'

2    experience covering SCSC, and on information and belief, new complaints were not made

3    available for viewing until after they had been docketed; information about the complaints had

4    been entered into the court's case management system; payment had been processed; and the

5    complaint had been scanned for viewing on public access terminals in the clerk's office.  It was

6    only after all these steps were completed by court clerks that the press was allowed to see new

7    civil unlimited complaints, resulting in regular delays in access to those new complaints.

8        35.    With the adoption of e-filing, SCSC had the opportunity to use e-filing technology

9    to address and resolve the problem of delayed access to new civil complaints by adopting any one

10   of the readily available methods used by state and federal trial courts across the country to provide

11   timely access to new e-filed complaints.  The most obvious and likely most readily available

12   option already existed in the form of a built-in feature of the Odyssey e-filing and case

13   management systems used by SCSC: the review queue.

14       36.    The "review queue" is a standard feature of Odyssey eFileCA that operates as the

15   clerk's electronic inbox for receiving new e-filed documents.  Court clerks review and process

16   new e-filed documents that have been received in the review queue, and determine whether to

17   accept or reject the e-filing.  Both the Fresno and Kern County Superior Courts provide access to

18   the review queue to members of the press or public seeking timely access to new civil complaints

19   so that new complaints can be seen even if clerks have not yet been able to turn to those

20   complaints.  In both courts, access to the review queue is provided online through the Odyssey

21   eFileCA website.  Built-in security protocols ensure that filings designated by the filer as sealed or

22   confidential are not routed into or accessible through the review queue.  In Fresno Superior Court,

23   most confidential complaints must be filed in paper form, bypassing the Odyssey eFileCA system

24   altogether.

25       37.    Unlike its sister courts in Fresno and Kern, however, SCSC has not adopted a

26   policy or practice of providing timely access to new civil complaints or other e-filed documents

27   through the review queue in Odyssey eFileCA.  Instead, SCSC's policy and practice is to withhold

28   new e-filed complaints until after court staff has completed administrative processing and released

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

11

them for viewing on public access terminals located at the courthouse.  On information and belief, the administrative processing performed by court staff at SCSC entails one or more clerks sitting at a computer terminal in the clerk's office and working through the electronic review queue in Odyssey eFileCA.  The clerks review and process e-filed documents in the review queue, one at a time, by inputting any data required for the court's case management system that was not provided by the filer, confirming the filer inputted case information correctly, assigning judges, docketing case dates and deadlines, and performing any other administrative tasks.  New e-filed complaints are processed in the ordinary course along with other e-filed documents received into the review queue.  Once the clerk completes all steps required to process the new e-filed complaint he or she "accepts" the e-filing, releasing it from the review queue and into the court's case management system.  Only then does the complaint and related docket information appear on public access terminals.  Because of processing backlogs, reporters normally cannot see new complaints filed at SCSC on the day of filing, and access to new e-filed complaints is regularly withheld and denied for as many as five court days, and longer.  In other words, it is not unusual for a week to pass before the press and public have any way of knowing that a civil unlimited lawsuit at SCSC even exists.

38.     The delays in access at SCSC resulting from Defendant's practice and policy of withholding access until after processing is compounded by other restrictions on access:

a.     Each day, SCSC shuts the public out of the only place where the vast majority of new civil unlimited complaints can be viewed, while court staff continues working behind locked doors.  Most new civil unlimited complaints filed at SCSC can only be seen on public access terminals located in the Records Room of the clerk's office (the exceptions are cases designated as complex, which SCSC makes available – after processing – through a web site accessible outside the courthouse).  Pursuant to SCSC's early closure policy, the clerk's offices at all SCSC courthouses, including the Records Room, close to the public at 3:00 p.m. on Monday through Thursday, and at noon on Friday, even though court staff continue to work until 5:00 p.m. each court day and complaints received before midnight on a court day are given that day's "filed" date.  Accordingly, even if SCSC were not withholding complaints until after processing, access to

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF          CASE NO. 18-6118
12216944.1

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

1   any new non-complex civil unlimited complaint filed after noon on a Friday, or filed after 3:00

2   p.m. any other court day, would be delayed at least one court day due to the early closure policy.

3           b.      Additionally, SCSC limits copies of new complaints to a maximum of 25

4   pages per courthouse visit.  This page limitation means members of the press and public are

5   typically not able to obtain complete copies of more than one or two new civil complaints on any

6   given day.  Prompt and complete access to copies of complaints is essential to accuracy in news

7   reporting, and the inability to obtain complete copies of new civil unlimited complaints prohibits

8   press from providing the public with the source material on which they are reporting.

9         39.     CNS wrote to Defendant's predecessor, David Yamasaki, on September 9, 2016, to

10   address the delays in access to new unlimited civil complaints at SCSC, and to request that SCSC

11   discontinue its practice of withholding access to new filed civil complaints until after processing.

12   CNS specifically noted the review queue solution to the problem of delayed access to new e-filed

13   civil unlimited complaints.  A true and correct copy of this letter is attached as Exhibit 1.  CNS did

14   not receive a response to this letter.

15         40.     Defendant became clerk of SCSC in or about December 2016.   In anticipation of

16   her starting as clerk at SCSC, CNS wrote to Defendant on November 30, 2016, to address the

17   delays in access at SCSC, and to request that SCSC discontinue its practice of withholding access

18   to newly filed civil complaints until after processing.  A true and correct copy of this letter is

19   attached as Exhibit 2.  Defendant did not respond to this letter.

20         41.     CNS again wrote to Defendant on February 21, 2017, this time through counsel, to

21   once again address the delays in access at SCSC and to once again request that SCSC discontinue

22   its practice of withholding access to newly filed civil complaints until after processing.  CNS

23   suggested that with the upcoming adoption of mandatory e-filing for all civil unlimited cases,

24   SCSC could take advantage of e-filing technology to provide access on receipt and before

25   processing through a review queue.  A true and correct copy of this letter is attached as Exhibit 3.

26   Neither CNS nor its counsel received any response to this letter.

27         42.     In the hopes of avoiding this lawsuit, CNS wrote to Defendant on August 15, 2018,

28   and made a final request for timely access to new civil complaints at SCSC, again raising the

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

option of a review queue as used by the Fresno and Kern Superior Courts.  A true and correct copy of this letter is attached as Exhibit 4.

43.    On September 10, 2018, SCSC's Assistant Executive Officer and General Counsel, Lisa Herrick, responded to CNS' August 15 letter via email, stating: "We are looking into the issues you raised about a 'press review queue' and 'Media Access Portal' and will respond to you as quickly as we can."  In response, CNS asked to know SCSC's position within two weeks.  A true and correct copy of this email exchange is attached as Exhibit 5.  To date, CNS has not received any further communication from Defendant or Ms. Herrick, and Defendant has not changed or committed to changing her policies or practices that result in delays in access to new unlimited civil complaints at SCSC.

44.    For the period of August 27 through September 21, 2018, CNS tracked the availability of newly filed complaints at the Downtown Courthouse.  During that period, CNS viewed 546 new unlimited civil complaints and petitions.  The following charts reflect the delays between the date of filing and the date that CNS was first allowed to see the complaint:

**COMPLAINTS REVIEWED**
**Delays Reported in Court Days**

| Length of Delay | Number of Cases | Percentage |
| --- | --- | --- |
| No Delay | 104 | 19.05% |
| One Day | 61 | 11.17% |
| Two Days | 31 | 5.68% |
| Three Days | 40 | 7.33% |
| Four Days | 58 | 10.62% |
| Five Days + | 252 | 46.15% |

**COMPLAINTS REVIEWED**
**Delays Reported in Calendar Days**

| Length of Delay | Number of Cases | Percentage |
| --- | --- | --- |
| No Delay | 104 | 19.05% |
| One Day | 56 | 10.26% |
| Two Days | 27 | 4.95% |
| Three Days | 4 | 0.73% |
| Four Days | 11 | 2.01% |
| Five Days + | 344 | 63.00% |

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                     CASE NO. 18-6118
12216944.1

45.     CNS continues to experience significant delays in access to new civil unlimited complaints.  Defendant has numerous options available for providing timely access to new e-filed complaints at SCSC.  In addition to the various methods used by state and federal courts across the country, including through a review queue, SCSC could also provide paper copies of e-filed complaints so that they could be viewed in a timely manner, similar to the traditional media bin access to paper complaints SCSC once provided.

## COUNT ONE

### Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983

46.     Plaintiff CNS incorporates the allegations of Paragraphs 1-45 herein.

47.     Defendant's actions under color of state law, including without limitation her policy and practice of withholding newly filed civil unlimited complaints from press and public view until after administrative processing, and the resulting ongoing and pervasive denial of timely access to new civil unlimited complaints following their receipt for filing, deprive CNS, and by extension its subscribers, of their right of access to public court records secured by the First Amendment to the U.S. Constitution.

48.     There is no compelling or overriding interest sufficient to justify Defendant's actions resulting in the denial of timely access to new complaints under the First Amendment. And even if an overriding or compelling interest did exist, there are far less restrictive means of achieving any such interest, and Defendant's policies and practices are not narrowly tailored to serve any such compelling interest.

49.     Defendant's policies and practices, including without limitation her policy and practice of denying access to new complaints until after they are processed, are also not reasonable time, place or manner restrictions.

50.     CNS has no adequate and speedy remedy at law to prevent or redress Defendant's unconstitutional actions, and will suffer irreparable harm as a result of Defendant's ongoing violation of its First Amendment rights.  CNS is therefore entitled to declaratory and both preliminary and permanent injunctive relief to prevent further deprivation of the First Amendment rights guaranteed to it and its subscribers.

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Courthouse News Service prays for judgment against Defendant, in her official capacity as the Court Executive Officer/Clerk of the Superior Court of the State of California, County of Santa Clara, as follows:

1. For preliminary and permanent injunctions against Defendant, including her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her, or at her direction or under her control, prohibiting her preliminarily, during the pendency of this action, and permanently thereafter, from continuing her policies that deny CNS timely access to new civil unlimited jurisdiction complaints once they are received by the court for filing, including, *inter alia*, her practices of denying access to complaints until after administrative processing, denying access to complaints through early closure of the clerk's office, and denying access by limiting copies of new complaints.

2. For a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendant's policies and practices that knowingly affect delays in access to newly filed civil unlimited complaints are unconstitutional under the First and Fourteenth Amendments to the United States Constitution because these policies and practices constitute an effective denial of timely public access to documents that become public court records when they are received by the court for filing.

3. For an award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. For all other relief the Court deems just and proper.

Dated: October 4, 2018                    BRYAN CAVE LEIGHTON PAISNER LLP


By:    /s/ Jonathan G. Fetterly
       Jonathan G. Fetterly
       Attorneys for Plaintiff
       COURTHOUSE NEWS SERVICE

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF                CASE NO. 18-6118
12216944.1

# Exhibit 1

**COURTHOUSE NEWS SERVICE**
30 N. Raymond, Third Floor, Pasadena CA 91103, (626) 577-6700, home@courthousenews.com

September 19, 2016

David Yamasaki
Court Executive Officer
Santa Clara County Superior Court
191 N. First St.
San Jose, CA 95113

Dear Mr. Yamasaki,

Courthouse News has a history of discussing with your office the timeliness of press access in Santa Clara Superior Court. I am writing to renew that discussion based on two intervening events.

Santa Clara County Superior is moving to efiling at a brisk pace, and apparently expects to mandate efiling for general civil actions by the end of the year or shortly thereafter. The Court has chosen for efiling Tyler Technologies' Odyssey system, a system with which we are very familiar.

In addition, U.S. District Court Judge James Otero in the Central District of California ruled in May that a First Amendment right of access attaches to new civil complaints upon receipt before processing.

We are happy to be able to say that we have worked with a number of state courts that use the Odyssey system and they have been able to provide the press with just the type of access that complies with Judge Otero's ruling. The state courts in Clark County, Nevada, and those in Fulton and Dekalb counties in Georgia use the Odyssey system and they provide the press with access to a queue, which can be thought of as an electronic in-box, allowing journalists to review new civil actions in timely manner upon receipt and *prior to processing* by court officials. The result is excellent and timely press access.

With this letter, I am respectfully requesting that your office put in place an electronic in-box for *the timely review of new civil actions, prior to processing. Through experience, we know that* Odyssey officials are familiar with the in-box and can with relative ease set one up. We are also aware through talking with court officials in Georgia that the Odyssey officials did not charge those courts any additional fee for establishing a press in-box.

As a courtesy, I have attached a copy of Judge Otero's judgment in Courthouse News Service v.
Planet, and I remain ready and able to answer any questions you may have in this matter.


Sincerely,

Bill Girdner
Editor
Courthouse News Service
bgirdner@courthousenews.com

# Exhibit 2

COURTHOUSE NEWS SERVICE
30 N. Raymond, Third Floor, Pasadena CA 91103, (626) 577-6700, home@courthousenews.com

November 30, 2016

Rebecca Fleming
Court Executive Officer
Santa Clara County Superior Court
191 N. First St.
San Jose, CA 95113

Dear Ms. Fleming,

With your arrival as the new Court Executive Officer in Santa Clara Superior, I wanted to renew a request made in a September letter to your predecessor. That request was and remains for timely access to the newly filed unlimited civil complaints in Santa Clara Superior, upon receipt and before processing. The request is based on tradition and law.

Traditionally, the press reviewed paper copies of new complaints as they were received by the clerk's office, without such access being conditioned on completion of clerical tasks tied to the administrative processing of those complaints. This was the case in a host of state and federal courts around the nation, and in California in particular. And indeed it was the case in Santa Clara Superior many years ago, as I can attest based on personal observation.

That tradition is consistent with a ruling earlier this year by U.S. District Court Judge S. James Otero in which he found that the First Amendment right of timely access attaches upon receipt of a new complaint, before processing.

I understand that your office is currently switching to mandatory e-filing through Tyler's Odyssey software system. With the advent of e-filing, many courts have followed the longstanding tradition of access to paper filings with similarly prompt access to newly e-filed complaints.

While the method by which press access is provided is up to the Court's discretion, the most simple and efficient method is to give access, through terminals at the courthouse, to an electronic queue where new civil cases can be seen as they are received, before processing. Such a queue — what I think of as an electronic in-box — is what most federal courts provide as well as a number of state courts that use the same e-filing and case management software as Santa Clara Superior, namely the Tyler Odyssey system.

Through such an electronic in-box, journalists can review new cases as soon as they are received and before they are processed. Such access also fulfills the implicit promise of a new technology for court filing — that it will lead to progress in efficiency and in transparency.

Currently, the Court is withholding the newly filed paper complaints while they are administratively processed, a set of tasks that vary depending on the court and that are based on the work rate of court employees. The result is frequent delays in access of one or more court days.

I would respectfully argue that such withholding is in violation of the press's First Amendment right of access. Your office, however, has the opportunity to fix that violation and provide timely access to the new e-filed complaints. Such access is clearly feasible. A number of state courts also use the Odyssey system while providing journalists with timely access on receipt and before processing through an electronic in-box.

Thus the issue of access in Santa Clara Superior turns on a matter of will, not practicability.

I should add that your staff in Stanislaus Superior Court was very professional and helpful in our discussions on this same topic. The staff also appeared open and amenable to our proposal for an electronic in-box for the press. So I am hopeful for a similar reception from Santa Clara Superior under your leadership.

With this letter, I am requesting that your office grant members of the media access to the new civil actions filed in Santa Clara County Superior in a timely manner upon their receipt, irrespective of whether they are have been processed. Because your predecessor did not answer my initial letter dated Sept. 19, 2016, with this same request, I would respectfully request an answer within a reasonable time. We appreciate your attention to these important issues, and look forward to hearing from you.

Sincerely,

Bill Girdner
Editor, Courthouse News Service
bgirdner@courthousenews
Courthouse News Service
Suite 310
30 N. Raymond Ave.
Pasadena, CA 91102

# Exhibit 3



BRYAN CAVE LLP   Three Embarcadero Center, 7th Floor, San Francisco, CA 94111-4070
T: 415 675 3400 F: 415 675 3434   bryancave.com

Rachel Matteo-Boehm
Direct: 415.268.1996
rachel.matteo-boehm@bryancave.com

February 21, 2017

Rebecca Fleming
Clerk and Court Executive Officer
Superior Court of California
County of Santa Clara
191 N. First Street
San Jose, CA 95113

Re:   <u>Access To Civil Complaints At Santa Clara County Superior</u>

Dear Ms. Fleming:

On behalf of Courthouse News Service ("CNS"), I write to follow up on its Editor Bill Girdner's November 30, 2016 letter to you, a copy of which is enclosed.

As Mr. Girdner noted in his November 30 letter, the United States District Court for the Central District of California ruled in mid-2016 that there is a First Amendment right of timely access to newly-filed civil complaints that attaches upon receipt – before processing – and that Ventura County Superior Court Clerk Michael Planet's practice of withholding access to new complaints until after processing violated that right. *Courthouse News Serv. v. Planet*, 2016 WL 4157210 (C.D. Cal. May 26, 2016). The court thus permanently enjoined Ventura Superior "from refusing to make newly filed unlimited civil complaints and their associated exhibits available to the public and press until after such complaints and associated exhibits are 'processed,' regardless of whether such complaints are filed in paper form or e-filed." *Courthouse News Serv. v. Planet*, 2016 WL 4157354, *1 (C.D. Cal. June 14, 2016).

In addition, in December 2016, the Southern District of New York granted CNS's motion for a preliminary injunction against the New York County Clerk for his similar no-access-until-processing policy in a mandatory e-filing environment, resulting in one out of every three e-filed complaints at New York Supreme Court being withheld from the public and press for at least one day while they were being processed. A copy of this hearing transcript is enclosed for your reference.

Rebecca Fleming
February 21, 2017
Page 2

As Mr. Girdner also noted in his November 30 letter, at Santa Clara County Superior, new
unlimited jurisdiction complaints – most of which are still filed in paper form – are not provided to
the press until after they are processed, the result of which is that despite CNS's daily, in-person
visits to the courthouse, the majority of new complaints are withheld from review for at least a day,
and often longer. Consistent with *Planet*, CNS respectfully requests that Santa Clara County
Superior discontinue its practice of withholding access to newly filed civil complaints until after
processing, both as to the complaints filed in paper form and those that are e-filed.

As Mr. Girdner noted in his November 30 letter, as to e-filed complaints (currently the small
minority of those filed, although we understand Santa Clara County Superior plans to make e-filing
mandatory as to all new complaints later this year), access on receipt and before processing can be
provided through an electronic in box that can be seen on computer terminals at the courthouse.
Indeed, we understand computer terminals are currently in place at the courthouse, and e-filed
complex complaints may be accessed through those terminals, albeit only after processing.

On behalf of CNS, we appreciate your attention to these important matters, and look forward to
hearing from you.

Sincerely,

Rachel Matteo-Boehm

Enclosures

cc:     Courthouse News Service

297578.1

**Exhibit 4**

COURTHOUSE NEWS SERVICE
30 N. Raymond, Third Floor, Pasadena CA 91101 Phone 626 577 6700

August 15, 2018

Rebecca Fleming
Clerk of the Court
Santa Clara County Superior Court
191 N. First Street
San Jose, California 95113

Dear Ms. Fleming,

I am writing to respectfully renew CNS's request for timely access to new unlimited civil
complaints filed in Santa Clara County Superior Court. The new civil actions are a traditional
source of news from the courthouse.

I previously wrote to you before Santa Clara Superior's adoption of mandatory efiling for all
civil filings.  Since the adoption of mandatory efling CNS has experienced significant delays in
access to new unlimited civil complaints.

In a mandatory efiling environment, providing timely press access is a simple matter. We know
from direct experience in California and other states in the nation that Tyler Technologies, whose
software is used by Santa Clara Superior, is perfectly capable of providing a press review queue
that allows news reporters to see the new filings upon receipt by the court.

For example, both Fresno Superior and Kern Superior have mandated efiling. They both base
their efiling systems on software from Tyler. And they both provide press access to new
complaints through a press review queue on the Tyler platform that allows journalists to review
new filings upon receipt, prior to processing and acceptance.

In addition, Los Angeles Superior, which is working with a different software company, has
announced a "Media Access Portal" that will go into effect on January 3 of the New Year, when
mandatory efiling also goes into effect. The Media Access Portal by its specific terms provides
journalists access to newly filed complaints upon the filer's submission and prior to processing
and acceptance.

In addition, the four federal districts in California also provide the press with access to new civil
actions upon their receipt and prior to processing.

The clear conclusion from that experience is that Santa Clara County Superior can also provide
access to the press upon receipt. It is a matter of directing Tyler to provide a press review queue

in the same manner as court officials in Fresno and Kern have directed. I am respectfully asking that you provide that direction and open the press review queue in Santa Clara Superior.

Indeed, there is a tradition of excellent press access at the Court that goes back a long ways. When I first visited the Court in 1997 when the superior courts and municipal courts were still separate. I was permitted to go behind the counter in the records section for the Superior Court and review paper complaints from that same day held in a cardboard box placed on an empty desk. I remember that at least one other journalist was reviewing the new complaints when I did.

My request is for that tradition of excellent and timely access to be restored in this age of electronic filing, when it is easier than ever to provide, as other courts in California are currently demonstrating.

My last letter sent to your office last year did not receive a reply. I would ask that your office grant us the courtesy of a reply by Labor Day, roughly three weeks from now, to this request for timely access under the First Amendment.

Thank you in advance for your consideration of our request,

Bill Girdner
Editor
Courthouse News
bgirdner@courthousenews.com

# Exhibit 5

**Fetterly, Jon**

| | |
|---|---|
| **From:** | Bill Girdner <bgirdner@courthousenews.com> |
| **Sent:** | Monday, September 10, 2018 10:15 AM |
| **To:** | 'Lisa Herrick' |
| **Cc:** | Fetterly, Jon; Keating, Katherine |
| **Subject:** | RE: Letter to Rebecca Fleming - Santa Clara County Superior Court |

Hello Ms. Herrick,

Thanks very much for your response. Would you please let us know your position within two weeks.

Thank you again,

Bill Girdner
bgirdner@courthousenews.com
626 577 3870

**From:** Lisa Herrick <LHerrick@scscourt.org>
**Sent:** Monday, September 10, 2018 9:14 AM
**To:** bgirdner@courthousenews.com
**Subject:** Letter to Rebecca Fleming - Santa Clara County Superior Court

Dear Mr. Girdner –

The Santa Clara County Superior Court received your letter dated August 15, 2018. We are looking into the issues you raised about a "press review queue" and "Media Access Portal" and will respond further to you as quickly as we can.

Thank you.

**LISA HERRICK**
Assistant Executive Officer and General Counsel
Superior Court of California
County of Santa Clara
191 N. First Street
San Jose, CA 95113
408-882-2708
lherrick@scscourt.org
www.scscourt.org

1